1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL EARLE BOYER, | ) | 1:06-cv-00012-AWI-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS RE: |
| | ) | DISMISSAL OF PLAINTIFF'S SECOND |
| | ) | AMENDED COMPLAINT (Doc. 15) |
| v. | ) | |
| | ) | |
| ANNE FRANCES PETERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
|_____| ) | |

Plaintiff is proceeding in forma pauperis and pro se with an
action for damages and other relief concerning alleged civil
rights violations. The matter has been referred to the Magistrate
Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and
72-304. Plaintiff filed a second amended complaint on June 1,
2006.

I. Screening the Complaint

In cases wherein the plaintiff is proceeding in forma
pauperis, the Court is required to screen cases and shall dismiss
the case at any time if the Court determines that the allegation
of poverty is untrue, or the action or appeal is frivolous or
malicious, fails to state a claim on which relief may be granted,

1

or seeks monetary relief against a defendant who is immune from

such relief. 28 U.S.C. 1915(e)(2).

Fed. R. Civ. P. 8(a) provides:

A pleading which sets forth a claim for relief,
whether an original claim, counterclaim, cross-
claim, or third-party claim, shall contain
(1) a short and plain statement of the grounds
upon which the court's jurisdiction depends,
unless the court already has jurisdiction and
the claim needs no new grounds of jurisdiction
to support it, (2) a short and plain statement
of the claim showing that the pleader is entitled
to relief, and (3) a demand for judgment for
the relief the pleader seeks. Relief in the
alternative or of several different types
may be demanded.

A complaint must contain a short and plain statement as required

by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a

flexible pleading policy, a complaint must give fair notice and

state the elements of the claim plainly and succinctly. Jones v.

Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

Plaintiff must allege with at least some degree of particularity

overt acts which the defendants engaged in that support

Plaintiff's claim. Id. Although a complaint need not outline all

elements of a claim, it must be possible to infer from the

allegations that all elements exist and that there is entitlement

to relief under some viable legal theory. Walker v. South Cent.

Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990); Lewis v.

ACB Business Service, Inc., 135 F.3d 389, 405-06 (6th Cir. 1998).

In reviewing a complaint under this standard, the Court must

accept as true the allegations of the complaint in question,

Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740

(1976), construe the pro se pleadings liberally in the light most

favorable to the Plaintiff, Resnick v. Hayes, 213 F.3d 443, 447

1  (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor,

2  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

3      If the Court determines that the complaint fails to state a

4  claim, leave to amend should be granted to the extent that the

5  deficiencies of the complaint can be cured by amendment. Lopez v.

6  Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). A

7  complaint, or a portion thereof, should only be dismissed for

8  failure to state a claim upon which relief may be granted if it

9  appears beyond doubt that the Plaintiff can prove no set of

10 facts, consistent with the allegations, in support of the claim

11 or claims that would entitle him to relief. See Hishon v. King &

12 Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355

13 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log

14 Owners' Ass'n., Inc., 651 F.2d 1289, 1294 (9th Cir. 1981).

15 Dismissal of a pro se complaint for failure to state a claim is

16 proper only where it is obvious that the Plaintiff cannot prevail

17 on the facts that he has alleged and that an opportunity to amend

18 would be futile. Lopez v. Smith, 203 F.3d at 1128.

19     A claim is frivolous if it lacks an arguable basis either in

20 law or fact. Neitzke v. Williams, 490 U.S. 319, 324 (1989). The

21 test for malice is a subjective one that requires the Court to

22 determine whether the applicant is proceeding in good faith.

23 Kinney v. Plymouth Rock Squab. Co., 236 U.S. 43, 46 (1915); see

24 Wright v. Newsome, 795 F.2d 964, 968 n. 1 (11th Cir. 1986). A

25 lack of good faith is most commonly found in repetitive suits

26 filed by plaintiffs who have used the advantage of cost-free

27 filing to file a multiplicity of suits. A complaint may be

28 inferred to be malicious if it suggests an intent to vex the

3

1  defendants or abuse the judicial process by relitigating claims

2  decided in prior cases, <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1309

3  (D.C.Cir. 1981); if it threatens violence or contains

4  disrespectful references to the Court, <u>id.</u>; or if it contains

5  untrue material allegations of fact or false statements made with

6  knowledge and an intent to deceive the Court, <u>Horsey v. Asher</u>,

7  741 F.2d 209, 212 (8th Cir. 1984).

8      II. <u>The Complaint</u>

9      Plaintiff's second amended complaint is a twenty-one page

10  document filled with indirect, vague and conclusional allegations

11  with eighty pages of attachments in the form of exhibits; many of

12  the exhibits are copies of court pleadings or documents that are

13  not fully described or consist of selected pages of reporter's

14  transcript. Plaintiff lists as defendants the Superior Court and

15  clerk Johnna Nunn, the Kern County Sheriff's Department and

16  Deputy Sheriff Larry Thatcher, Perry Patterson (a prosecutor),

17  attorneys Daniel Jon Tobias and Jamie Gelber, Anne Frances Peters

18  (his former domestic partner and co-owner of property), and

19  Claudie Duckworth. The complaint concerns the sheriff, court,

20  court clerk, attorneys, and parties involved in a state court

21  proceeding concerning an application for a restraining order

22  against Plaintiff by Defendant Ann Frances Peters, with whom

23  Plaintiff purchased property intended to be used as a joint

24  residence. There is also reference to a warrant, and this,

25  coupled with the naming of a prosecutor, suggests that some

26  criminal proceedings may have occurred. However, there is no

27  reference to a particular warrant, accusation, conviction, or

28  sentence. It appears from the attachments and the complaint that

4

a settlement of the parties' dispute regarding the restraining order and the underlying real property was entered into on the record, and then later Plaintiff disputed the enforceability of the settlement, receiving an unfavorable judgment as well as similarly unfavorable state appellate review. Plaintiff also sued in state court his former counsel, Jon Tobias, for professional negligence and fraud in entering into the settlement. Plaintiff suffered a nonsuit in that action. Finally, copies of a reporter's transcript dated March 16, 2004, indicate that Peters sought to renew the restraining order. (Cmplt. pp. 27, 31.) In this action, Plaintiff seeks damages and injunctive relief.

Plaintiff asserts claims concerning 1) the sheriff's investigation of complaints made by both Plaintiff and Defendant Peters regarding domestic violence, and the prosecutor's handling of some aspect of a criminal proceeding or potential criminal proceeding; 2) the enforceability and/or effectuation of an allegedly fraudulent settlement agreement reached with respect to an allegedly malicious restraining order; 3) professional negligence by his counsel; and 4) a conspiracy among all Defendants to obtain a false warrant or warrant without probable cause, or a settlement of the civil dispute regarding domestic violence and property rights whereby Plaintiff would lose his interest in the residential property.

III. <u>The Court's Eleventh Amendment Immunity from Suit</u>

Plaintiff names as a defendant the "Superior Court," which apparently refers to the Superior Court of the County of Kern, where the initial state-court litigation occurred; he also names Clerk Johnna Nunn, who was the deputy court clerk who was present

5

1  in court on February 28, 2001, the date on which the stipulated

2  agreement in the domestic violence case was entered into on the

3  record. (Complt., Ex. D.)

4      The Eleventh Amendment bars suits which seek either damages

5  or injunctive relief against a state, an "arm of the state," its

6  instrumentalities, or its agencies. <u>Durning v. Citibank, N.A.</u>,

7  950 F.2d 1419, 1422-23 (9th Cir.1991). A suit against a

8  California superior court is a suit against the state and is

9  barred by the Eleventh Amendment. <u>Greater Los Angeles Council on</u>

10 <u>Deafness, Inc. v. Zolin</u>, 812 F.2d 1103, 1110 (9th Cir. 1987).

11 Accordingly, suit against the Superior Court is barred by the

12 Eleventh Amendment.

13     Further, if Plaintiff were to amend the complaint to name

14 instead of the court itself specific judges who have participated

15 in the state court litigation, those judges would be entitled to

16 judicial immunity. It is established that judges and officers

17 whose functions bear a close association to the judicial process

18 are entitled to absolute judicial immunity from damage actions

19 under 42 U.S.C. § 1983 for judicial acts taken within the

20 jurisdiction of their courts. <u>Demoran v. Witt</u>, 781 F.2d 155, 156

21 (9th Cir. 1986). A judge loses judicial immunity for judicial

22 acts only when the judge acts in the clear absence of all

23 jurisdiction or performs an act that is not judicial in nature.

24 <u>Shucker v.Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir. 1988). The

25 factors relevant in determining whether an act is judicial

26 "relate to the nature of the act itself, i.e., whether it is a

27 function normally performed by a judge, and to the expectations

28 of the parties, i.e., whether they dealt with the judge in his

6

1  judicial capacity." Stump v. Sparkman, 435 U.S. 349, 356-357, 362

2  (1978). Judicial immunity is not lost by allegations that a judge

3  conspired with a third party. As long as the judge's ultimate

4  acts are judicial actions taken within the court's subject matter

5  jurisdiction, immunity applies. Ashelman v. Pope, 793 F.2d 1072,

6  1078 (9th Cir. 1986).

7      The allegations of the complaint before the Court establish

8  that the judges whose actions are mentioned would be entitled to

9  absolute judicial immunity. The judges referred to in the

10 complaint or attachments include Judge Oglesby, who presided over

11 the hearing in February 28, 2001, at which the domestic violence

12 and property matters were settled (Ex. D.); Judge Quinlen, who

13 continued the matter from February 21 to February 28 (id.); and

14 Judge Chapin, who presided over proceedings in September 2005 in

15 the malpractice and fraud action at which a nonsuit was granted

16 with respect to Plaintiff's malpractice and fraud claims, and

17 found that Plaintiff had agreed on February 28, 2001, to a

18 settlement of issues and the issuance of a three-year restraining

19 order (Ex. F, pp. 56, 68, 90, 92, 97 of Doc. 15). The actions or

20 rulings of which Plaintiff could complain were made by the judges

21 in cases pending before the court and were within their

22 jurisdiction and were judicial in nature.

23     In the Court's order of February 28, 2006, dismissing

24 Plaintiff's original complaint with leave to amend, Plaintiff was

25 informed of the law concerning judicial immunity (Order at pp. 6-

26 7), but Plaintiff has failed to state facts that would render the

27 judges liable. It is clear that the Plaintiff cannot prevail on

28 the facts that he has alleged and that an opportunity to amend

7

1  would be futile.

2      Therefore, it will be recommended that this claim against

3  the court be dismissed with prejudice and without leave to amend.

4          IV. <u>Quasi-Judicial Immunity of the Court Clerk</u>

5      Plaintiff's allegations regarding the participation of the

6  court clerk J. Nunn are elliptical and conclusory. Most of them

7  concern the minute order entry on the day of the reading of a

8  settlement agreement into the record in the domestic restraining

9  order proceedings held on February 28, 2001.

10     Plaintiff states:

11     Minute Order of hearing, concealed from Plaintiff
       by the clerk and recently discovered falsely
12     implies clerk corroborates waiver and acquiescence of
       Plaintiff where clerk was not present as witness
13     to a waiver or an acquiescence.

14 (Complt. at 4.) Plaintiff refers to Exhibit D to the complaint

15 (Complt. p. 38), a copy of the minute order from February 28,

16 2001, which indicates that the parties stipulated that the clerk

17 need not take down the details of the agreement and would rely on

18 the court reporter's transcript. Reference to Exhibit G to the

19 complaint (Complt. at 81-85), which appears to be from a

20 reporter's transcript of the proceedings undertaken on that date

21 and time, reveals that counsel for both parties stipulated that

22 the clerk was relieved of her duties and that the parties were

23 documenting their agreement by stating it orally for the record.

24 It also reflects that Plaintiff agreed that he understood the

25 agreement recited on the record and agreed with it. In the body

26 of the complaint, Plaintiff alleges that Nunn, the clerk, arrived

27 after a short chambers meeting; Plaintiff claims that his

28 attorney could not compromise his rights and that the record was

8

1  false because no settlement occurred. (Cmplt. at 14-15.)

2      Considering the exhibits to the complaint offered by

3  Plaintiff, it appears that Plaintiff is claiming that it was his

4  counsel who authorized the use of a reporter's record, as

5  distinct from a clerk's record, of the terms of the agreement.

6  Further, it appears that although settlement proceedings occurred

7  on that date, including the reading of the terms of a settlement

8  agreement into the record with the consent of Plaintiff and his

9  attorney, Plaintiff is claiming that no settlement really

10 occurred because Plaintiff "never spoke directly with the judge

11 and never adequately convened with the attorney of record."

12 (Cmplt. at 4.) When the attachments to the complaint are

13 considered, it does not appear that Plaintiff is claiming that

14 the clerk incorrectly reported what counsel and the court

15 represented to the clerk; rather, Plaintiff is claiming that

16 although the record reflects his conduct on that day, the legal

17 effect of that conduct did not amount to an enforceable meeting

18 of the minds or agreement.[1]

19     Plaintiff also alleges that Clerk Nunn knew that Plaintiff's

20 attorney, Tobias, submitted false pleadings known to be redundant

21 (Cmplt. p. 13); on unspecified occasions Nunn provided an

22

23     [1]Fed. R. Civ. P. 10(c) provides that statements in a pleading may be
adopted by reference in a different part of the same pleading or in another
24 pleading or in any motion. It further provides that  a copy of any written
instrument which is an exhibit to a pleading is a part thereof for all
purposes.
25     Where there is a disparity between a written instrument annexed to a
pleading and an allegation in the pleading based thereon, the written
26 instrument will control. Nishimatsu Constr. Co. Ltd. v. Houston National Bank,
515 F.2d 1200, 1206-07 (5th Cir. 1975) (concerning a default judgment) (citing
27 Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940)
(concerning a motion to dismiss, and noting that one may plead himself out of
28 court by attaching exhibits that contradict or refute the allegations of the
complaint)).

incomplete record and concealed a minute order (id. at 15-16),

which Plaintiff finally discovered in July 2005; and Nunn

concealed the minute order because her statement "verifies and

ratifies the methods of collusion of the actors." He states:

> But for the supression (sic) of this document
> Plaintiff could have determined the collusion and defense
> and the outcome would have been different. Nunn with
> intent to conceal fraud of the actors concealed evidentiary
> documents requested and rightfully to be available. The
> intent to conceal reveals fraud in and surrounding the
> chamber meeting where Nunn was not present.

(Cmplt. at 16.) Plaintiff goes on, however, to state that Nunn

furnished Plaintiff's new counsel, Collins, the minute order, and

yet on unspecified occasions concealed it from Plaintiff. (Cmplt.

at 17.) Plaintiff claims that the clerk thereby caused Collins

mistakenly to assume that Plaintiff had waived evidence and

rights by agreeing to a settlement of a dispute regarding the

land that he and Peters had occupied.

As to any concealment, the circumstances are not stated; it

is not clear under whose direction, by what conduct, or under

what conditions the record was concealed or how concealment of a

part of a public record could even be accomplished. Further, it

is not alleged that any violation of rights resulted from any

conduct of Nunn.

The proponent of a claim to immunity bears the burden of

establishing the justification for such immunity. Antoine v.

Byers & Anderson, Inc., 508 U.S. 429, 432 (1993).

Judicial or quasi-judicial immunity has been extended not

only to those who actually adjudicate disputes in an adversarial

setting, but also in appropriate cases to non-jurists who perform

functions closely associated with the judicial process. In re

10

1  Castillo, 297 F.3d 940, 948 (9th Cir. 2002). The doctrine is

2  appropriately applied to persons other than judges who exercise

3  judgments functionally comparable to those of judges, i.e., those

4  who exercise a discretionary judgment as part of their function.

5  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1993)

6  (holding that a court reporter who was charged with having failed

7  to provide a transcript and who was bound by statute to provide

8  verbatim reports of a criminal trial was not entitled to immunity

9  because she was afforded no discretion in carrying out the duty

10 to record proceedings). After Antoine, the key question is not

11 simply whether common law judges performed the task in question,

12 but rather, whether judges themselves, in performing the function

13 at issue, would be entitled to absolute immunity. Antoine, 508

14 U.S. at 435; In re Castillo, 297 F.3d 940, 949 (9th Cir. 2002).

15     Traditionally it has been recognized that court clerks have

16 absolute quasi-judicial immunity from damages for civil rights

17 violations when they perform tasks that are an integral part of

18 the judicial process, such as filing documents and giving

19 notices. Mullis v. United States Bankruptcy Court for Dist. of

20 Nevada, 828 F.2d 1385, 1390 (9th Cir. 1987). After the decision

21 in Antoine v. Byers & Anderson, Inc., 508 U.S. 429, it has been

22 recognized in the Ninth Circuit that court clerks who are

23 performing tasks related to the judicial process of resolving

24 disputes, and who retain some measure of discretionary judgment

25 in performing those tasks, continue to be immune from suit. See,

26 Moore v. Brewster, 96 F.3d 1240, 1244-45 (9th Cir. 1996) (holding

27 that a court clerk, and a law clerk who assisted a judge by

28 performing functions closely associated with the judicial process

and duties most intimately connected with the judge's own
exercise of judicial function, were entitled to absolute quasi-
judicial immunity), <u>cert.</u> <u>denied</u> 519 U.S. 1118 (1997); <u>In re</u>
<u>Castillo</u>, 297 F.3d 940, (9th Cir. 2002) (holding that a
bankruptcy trustee's clerk was entitled to complete quasi-
judicial immunity with respect to the clerk's scheduling of a
hearing and failing to give notice of a hearing because both were
functionally comparable to judicial actions, and were analogous
to judicial action, in that they involved control of the docket,
a task involving the exercise of discretionary judgment related
to the resolution of disputes).

Although there is a dearth of published authority in this
circuit regarding immunity in the precise circumstances of this
case, the court in <u>Antoine</u> noted that common law judges exercised
discretion in deciding exactly what, and how much, they would
write, and that it was without doubt that judicial note-taking
involved the kind of discretionary decision making that the
doctrine of judicial immunity was designed to protect. <u>Antoine v.</u>
<u>Byers & Anderson, Inc.</u>, 508 U.S. 429, 435 (1993). The present
case involves a court clerk's judicial note-taking and record-
keeping, functions within this area of discretionary judicial
function.

Accordingly, it will be recommended that the claim against
court clerk J. Nunn be dismissed with prejudice and without leave
to amend on the basis of quasi-judicial immunity.

V. <u>Prosecutorial Immunity</u>

Plaintiff's second amended complaint is so unclear that the
Court cannot know the nature and extent to which any criminal

proceedings occurred. There are several references to the

prosecutor, and/or to Perry Patterson. Plaintiff alleges that

unspecified court actors knowingly aided Defendant Peters to

obtain a false warrant through "machination of biased

Prosecutor." (Cmplt. at 2.) It is alleged that after a

confrontation with Peters on the property on January 8, 2001 (<u>id.</u>

p. 8), Plaintiff requested from a deputy sheriff an exculpatory

investigation, but the deputy failed to investigate. Plaintiff

alleged that he then confronted prosecutor Perry Patterson and

Deputy Sheriff Thatcher on February 11, 2001, and brought a

witness. The prosecutor scowled, said that he thought that

Plaintiff was guilty, and also said that he would decide whom to

prosecute. (<u>Id.</u> p. 9.) In a reference to the sheriff deputy's

continuing failure to investigate, which Plaintiff characterized

as undertaken with knowledge of Peters' intent to cause issuance

of a warrant through false allegations, Plaintiff characterized

the deputy's actions as being condoned by the prosecutor. (<u>Id.</u> p.

10.) He further alleged that the prosecutor later denied

knowledge of the investigation. (<u>Id.</u> p. 11.) Plaintiff also made

an additional allegation which is unclear and may be a reference

to the prosecutor, but may instead refer to his own counsel,

Tobias:

> Prosecutor relied on Plaintiff's attorney to subvert
> Plaintiff's defense and prevent Plaintiff from having
> a hearing. Plaintiff is prosecuted by his own attorney.
> Tobias served Prosecutor as presiding judge for 20 years.

(Cmplt. p. 14.)

State prosecutors are absolutely immune from civil liability

for acts taken in their official capacity that are closely

1 associated with the judicial process, such as initiating

2 prosecution and presenting the state's case. Imbler v. Pachtman,

3 424 U.S. 409, 427, 430-431 (1976); Milstein v. Cooley, 257 F.3d

4 1004, 1008 (9th Cir. 2001). A prosecutor has absolute immunity

5 for the decision to prosecute a particular case and for the

6 decision not to prosecute a case or group of cases; such a

7 decision is intimately tied to the judicial process. Botello v.

8 Gammick, 413 F.3d 971, 976-77 (9th Cir. 2005).

9     The conduct of the prosecutor alleged in the complaint

10 before the Court appears to be conduct concerning a decision to

11 prosecute or not to prosecute. Accordingly, it is recommended

12 that the claim against Perry Patterson, a prosecutor, be

13 dismissed with prejudice and without leave to amend.

14     VI. Attorneys

15     With respect to his attorney, Tobias, Plaintiff alleges that

16 his attorney's substandard and disloyal conduct prevented him

17 from presenting his defense and resulted in Plaintiff's belief

18 that he could accept the stipulation reached with respect to his

19 property in connection with the restraining order and yet still

20 contest the loss of his property. Plaintiff also alleged that

21 Tobias and Gelber, attorney for Peters, ratified Nunn's role in

22 the "systemic falsity of the record that a negotiated or

23 anticipated settlement had occurred." (Cmplt. at 17.) He further

24 alleged:

25         Attorneys Gelber and Tobias further colluded by
        fluffing that affidavits and exhibits were considered

26         that Plaintiff waived his opportunity to examine them.

27 (Cmplt. at 18.)

28     To state a claim under section 1983, a plaintiff must plead

14

(1) that the defendant acted under color of state law and (2) that the defendant deprived him of rights secured by the Constitution or federal statutes. <u>Gibson v. United States</u>, 781 F.2d 1334, 1338 (9th Cir. 1986). Generally, private parties are not acting under color of state law. <u>See</u> <u>Price v. Hawaii</u>, 939 F.2d 702, 707-08 (9th Cir. 1991). Aside from alleging a conspiracy (discussed below), Plaintiff has failed to plead any facts indicating that Gelber or Tobias individually acted under color of state law; rather, they appear to be private parties, and thus, Plaintiff has failed to state a claim against them.

Plaintiff was warned of this requirement in the Court's order of May 2, 2006 dismissing Plaintiff's first amended complaint with leave to amend. (Order at pp. 10-11.) Plaintiff was unable to allege facts warranting a conclusion that these Defendants acted under color of state law. It appears that giving Plaintiff yet another opportunity to amend on this point would be futile.

Accordingly, it is recommended that Plaintiff's claim against attorneys Gelber and Tobias be dismissed with prejudice and without leave to amend.

VII. <u>Kern County Sheriff's Department</u>

Plaintiff alleges conduct by Deputy Sheriff Larry Thatcher, and he also names the Kern County Sheriff's Department as a defendant.

However, Plaintiff does not allege facts concerning any conduct engaged in by the County that would subject it to liability under § 1983. The Court notes that a local governmental unit may not be held responsible for the acts of its employees

under a respondeat superior theory of liability; a county could be liable for its own actions in the nature of policy or customs, factual circumstances which Plaintiff has not alleged. See Bd. of County Commissioners v. Brown, 520 U.S. 397, 403 (1997). Plaintiff has not alleged facts indicating a claim against the Sheriff's Department.

Plaintiff was warned of this defect in the Court's order dismissing the first amended complaint with leave to amend. (Order at pp. 9-10.) Plaintiff has not been able to allege facts that would constitute a basis for liability on the part of the department or county.

Accordingly, it is recommended that Plaintiff's claim against the Kern County Sheriff's Department be dismissed with prejudice and without leave to amend.

VII. Defendant Peters

Liberally read, Plaintiff alleges that Defendant Peters began a secret and fraudulent spousal abuse scheme whereby although she actually kicked and dragged Plaintiff, she planned to obtain his property by proceeding falsely to obtain a restraining order and ultimately to obtain Plaintiff's interest in the shared property. (Cmplt. pp. 2, 7.)

Aside from alleging a conspiracy (discussed below), Plaintiff does not allege any facts that would warrant a conclusion that Peters was acting under color of law. Peters was a private party who reported an incident to law enforcement and sought a restraining order. One way to establish action under color of law is to demonstrate joint action where a private party is a wilful participant in joint action with the state or its

agents; the test is whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity, such as where the state knowingly accepts the benefits derived from unconstitutional behavior. <u>Kirtley v. Kainey</u>, 326 F.3d 1088, 1093-94 (9th Cir. 2003). However, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with a judge. <u>Dennis v. Sparks</u>, 449 U.S. 24, 28 (1980). Merely making a single report or request to police to perform peace-keeping responsibilities is generally insufficient to render action joint. <u>Peng v. Mei Chin Penghu</u>, 335 F.3d 970, 980 (9th Cir. 2003). Here, absent the conspiracy allegations (discussed below), there is no further allegation that Peters did anything more than seek a remedy through the courts.

Accordingly, it will be recommended that the claim against Defendant Peters be dismissed for failure to state a claim upon which relief may be granted pursuant to § 1983.

VIII.   <u>Claim against Claudie Duckworth</u>

Plaintiff makes limited reference to one "Claudie," a personal associate of the prosecutor and Peters. (Complt. at 2.) Plaintiff does not state facts stating a claim against Claudie "Duckworth," a named Defendant. The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

17

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a plaintiff must plead that defendants acted under color of state law at the time the act complained of was committed and that the defendants deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>Gibson v. United States</u>, 781 F.2d 1334, 1338 (9th Cir. 1986). The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. <u>See Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

Here, Plaintiff failed to allege that this Defendant engaged in any conduct that violated his rights. Accordingly, Plaintiff has failed to state a claim against Defendant Claudie Duckworth. Plaintiff was informed of the requirements of § 1983 in the Court's order dismissing with leave to amend the first amended complaint. Plaintiff did not state facts stating a claim after being informed of the legal standard. It appears that giving

Plaintiff another opportunity to amend in this regard would be futile.

Accordingly, it will be recommended that the claim against Claudie Duckworth be dismissed without leave to amend.

IX. <u>Malicious Prosecution or Abuse of Process</u>

Plaintiff does not directly allege that he was prosecuted or that he suffered a criminal conviction or sentence. Plaintiff instead makes reference to a warrant, and specifically, a conspiracy to cause issuance of a warrant without probable cause (Cmplt. p. 4). However, the complaint does not specify the nature of any such warrant or any details as to any effectuation or service of any warrant. It thus does not appear that Plaintiff is claiming that he was injured by the issuance or service of any warrant. Accordingly, Plaintiff does not state a claim concerning a warrant or a criminal prosecution.

Plaintiff also refers to having false evidence presented at a "temporary stay-away hearing" or to county officials, and to a right to be free from a "quasi-criminal permanent stay-away order unjustifiably imposed upon him by the state of California" which involved restriction of rights afforded by the United States Constitution. (Cmplt. p. 2.) It appears that the judicial process involved in the conduct of which Plaintiff complains was a civil proceeding concerning the issuance of a temporary and/or permanent restraining order against Plaintiff at the application of Defendant Peters, a co-resident of the co-owned real property, which in turn appears on the basis of the record to have terminated with a settlement agreement whereby Plaintiff sold his interest in the property to Defendant Peters.

In the Ninth Circuit, a claim for malicious prosecution or
abuse of process is not generally cognizable under 42 U.S.C. §
1983 if process is available within the state judicial system to
provide a remedy. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556,
561-62 (9th Cir.1987). However, an exception exists when a
malicious prosecution is conducted with the intent to deprive a
person of equal protection of the laws or otherwise intended to
subject a person to a denial of constitutional rights. <u>Id.</u> at
562.

Here, Plaintiff claims that the civil proceeding was
undertaken maliciously and with the purpose of depriving him of
his property interest in the real property which he shared with
Defendant Peters.

A malicious prosecution claim under § 1983 is based on
state-law elements. <u>Usher</u>, 828 F.2d at 562. The essential
elements of malicious prosecution are the same in criminal and
civil contexts. The plaintiff must plead and prove that the prior
proceeding, commenced by or at the direction of the malicious
prosecution defendant, was 1) pursued to a legal termination
favorable to the plaintiff; 2) brought without probable cause;
and 3) initiated with malice. <u>Ayala v. KC Environmental Health</u>,
426 F.Supp.2d 1070 (E.D.Cal.2006) (citing <u>Villa v. Cole</u>, 4
Cal.App.4th 1327, 1335 (1992). The plaintiff must show that the
defendant prosecuted him with malice and without probable cause,
and that they did so for the purpose of denying the plaintiff
equal protection or another specific constitutional right.
<u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1189 (9th Cir. 1995).

Here, it appears that there was a stipulated agreement

20

(Cmplt, Ex. D) and that a restraining order was filed after

hearing (id., Ex. F). A termination in civil proceedings

concerning a restraining order is favorable if it tends to

indicate the innocence or lack of fault on the part of the

plaintiff and is inconsistent with liability for conduct

warranting a restraining order. Lackner v. LaCroix, 25 Cal.3d

747, 749-50 (1979); Babb v. Superior Court , 3 Cal.3d 841, 846

(1971) (standard applicable to civil cases); see, Jaffe v. Stone,

18 Cal.2d 146, 149 (1941) (noting that even dismissal of criminal

charges did not necessarily indicate the innocence of the accused

or lack of merit in the action, and thus was not favorable). If

the resolution of underlying litigation leaves some doubt as to

the malicious prosecution plaintiff's innocence or liability, it

is not a favorable termination and bars the party from bringing a

malicious prosecution action against the adverse party. A

dismissal resulting from negotiation, settlement or consent is

generally not deemed a favorable termination of a proceeding.

Webb v. Youmans, 248 Cal.App.2d 851, 853 (1967). An offer to

stipulate to the precise injunctive relief sought by an opposing

party implies that the offering party was not innocent of the

conduct. StaffPro, Inc. v. Elite Show Servies, Inc., 136

Cal.App.4th 1392, 1400-01 (2006). The general rule is that a case

concluded as a result of settlement does not result in a

favorable termination because such a result is ambiguous and does

not reflect on the merits, but leaves open the question of the

parties' guilt or innocence. HMS Capital, Inc. v. Layers Title

Co., 118 Cal.App.4th 204, 214-15 (2004).

     Because Plaintiff has not alleged a favorable termination of

the underlying civil action, Plaintiff has not stated a claim for malicious prosecution. Further, it does not appear that Plaintiff could allege facts demonstrating a favorable termination of the proceeding for the restraining order. Accordingly, Plaintiff failed to state a claim for malicious prosecution with respect to the proceeding for the restraining order.

X. Equal Protection

Plaintiff claims that the Sheriff's Department and unspecified "Court Actors" (Cmplt. P. 2) worked a denial of equal protection in aid of a subsidiary conspiracy intended to steal Plaintiff's ranch property (id.). He alleges that Deputy Thatcher deprived Plaintiff of a right to equal protection by depriving him from unspecified requested exculpatory evidence necessary to safeguard him from the plot. (Id. P. 9.)

With respect to equal protection of the laws, Plaintiff has not alleged that he is a member of a class deserving of protection under the laws of the United States or that he has been treated in a manner inconsistent with others similarly situated in violation of the equal protection clause of the Constitution. See, Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005). The facts do not suggest a viable theory of equal protection violation.

It is recommended that Plaintiff's equal protection claim be dismissed without leave to amend.

XI. Investigation Leading to Wrongful Conviction

Plaintiff alleges that Deputy Sheriff Larry Thatcher was compelled to investigate a series of fraudulent acts designed to implicate Plaintiff falsely (presumably a reference to Peters'

reports of Plaintiff's having effected or threatened violence
upon her); Thatcher suppressed all evidence of the investigation
to Plaintiff's detriment. Peters had called Deputy Thatcher, to
whom Plaintiff had also reported an incident; Thatcher suggested
to Peters that she try to obtain a temporary restraining order.
(Cmplt. pp. 3, 28, 32 (Ex. B)). Plaintiff claims that false
statements were made; reports and evidence were not presented to
the court at the hearing (presumably a hearing on the restraining
order) or to county officials (Cmplt. p. 2); unspecified actors
intentionally omitted knowledge of witnesses and suspects from
the report; and even though Plaintiff requested an exculpatory
investigation, Thatcher neglected to investigate exculpatory
findings in a timely manner, and wilfully and knowingly concealed
the investigation and report from Plaintiff with deliberate
indifference to Plaintiff's safety and constitutional rights (id.
pp. 5, 8). Plaintiff also alleges that Thatcher willfully created
a false warrant with intent to cause detriment to Plaintiff
(Cmplt. p. 10) or knowingly aided improper effectuation of a
false warrant (id. p. 12); Thatcher effectuated "the fraudulently
petitioned stay-away warrant" (id. at 10).

Reference to Exhibit J to the second amended complaint
reveals that Thatcher authored a report dated January 10, 2001,
in which he reviewed statements made by Plaintiff and by Peters
regarding their respective versions of a physical confrontation
between Plaintiff and Peters on January 8, 2001; he stated that
the report would be forwarded to the DA's office for review at
Boyer's request. (Cmplt. pp. 59-62.)

There is authority to the effect that a 1983 claim may be

1   stated where a person investigated is wrongly convicted,

2   arrested, or charged on the basis of false evidence that was

3   deliberately fabricated by the government, or based on a bad

4   faith failure to preserve or collect potentially exculpatory

5   evidence. See, Devereaux v. Abbey, 263 F.3d 1070, 1075 (9th Cir.

6   2001); Cunningham v. City of Wenatchee, 345 F.3d 802, 812-13 (9th

7   Cir. 2003); Gausvik v. Perez, 345 F.3d 813, 817 (9th Cir. 2003).

8   However, Plaintiff has not alleged that he was arrested or

9   charged with a criminal offense, let alone that any prior

10  criminal proceeding terminated in a manner as to indicate his

11  innocence. Plaintiff thus cannot make out a claim of a violation

12  of due process resulting in a wrongful criminal charge or

13  conviction. Awabdy v. City of Adelanto, 368 F.3d 1062, 1066, 1068

14  (9th Cir. 2004).

15      Further, if Plaintiff were to allege a conviction or

16  confinement resulting from the allegedly wrongful conduct, then

17  this case would be governed by the rule of Heck v. Humphrey, 512

18  U.S. 477, 487 (2005), that a prisoner's damage suit cannot

19  proceed if a judgment in his favor would necessarily imply the

20  invalidity of his conviction or sentence unless the prisoner has

21  demonstrated that the conviction or sentence has already been

22  invalidated. This rule has been applied to civil proceedings only

23  where there is present the danger of bypassing a habeas corpus

24  remedy. Huftile v. Miccio-Fopnseca, 410 F.3d 1136, 1139-40 (9th

25  Cir. 2005) (applying it to a sexual predator proceeding in which

26  a civil detained challenged his civil commitment).

27      It is recommended that to the extent that Plaintiff attempts

28  to state such a claim, the claim be dismissed without leave to

24

1  amend.

2      XI. <u>Lack of Jurisdiction</u>

3      Some of the claims alleged by Plaintiff involve the

4  allegedly concerted conduct of all of the parties involved in the

5  civil restraining order proceedings concerning the domestic

6  violence and property issues.

7          A. <u>Conspiracy</u>

8      Plaintiff claims that he was injured by the investigation or

9  other conduct preceding, during, and after the hearing on the

10 restraining order because he was subjected to the application

11 for, as well as the proceeding and resulting judgment granting, a

12 restraining order.

13     Plaintiff makes numerous vague allegations concerning a

14 conspiracy of all or among unspecified "actors" or "court

15 actors," who allegedly knew that a complaint was groundless, and

16 acted with the object of stealing Plaintiff's property and

17 causing the issuance of a warrant without probable cause, which

18 resulted in deprivation of Plaintiff's right to due process of

19 the law. (Cmplt. pp. 2, 4 , 12, 13, 18, 20.)

20     Plaintiff must allege some facts with respect to the

21 conspiracy. In the context of conspiracy claims brought pursuant

22 to section 1983, such a complaint must "allege specific facts to

23 support the existence of a conspiracy among the defendants."

24 <u>Buckey v. County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir.

25 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d

26 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants

27 conspired or acted jointly in concert and that some overt act was

28 done in furtherance of the conspiracy. <u>Sykes v. State of</u>

25

California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has alleged various acts, as alluded to hereinabove. Further, Plaintiff has alleged that various unspecified actors have shared an object to deprive him of his property. Plaintiff alleges that the sheriff collaborated in Peters' fraud, was compelled to investigate a series of fraudulent acts designed to implicate Plaintiff falsely, and suppressed all evidence of the investigation to his detriment; he refers to abstract "fraud of collusive court actors to prevent presentation of Plaintiff's defense." (Cmplt. pp. 3- 4.) He refers to unspecified evidence Plaintiff intended to present (presumably his version of the domestic conflict apparently embodied in his unsigned "declaration" (Cmplt. Ex. C)), and he alleges that collusive "court actors" prevented presentation of his defense, and he refers to his attorney's collusive false pleadings. (Cmplt pp. 4-5.) He complains that he never agreed to sell his ranch or to acquiesce in stay-away orders. (Id. P. 5.) He alleges that the stay-away order and record were "not rendered by true belief but for an ulterior purpose of property control" by unspecified concerted efforts of the sheriff, prosecutor, attorney, clerks and "court actors." He asserts that his attorney, Tobias, "instilled false beliefs to induce Plaintiff to unwittingly" accept the order, and that this was motivated by a desire to hide the complicity of "actors" aiding a subsidiary conspiracy to control the property. (Id. p. 6.) He alleges false and neglectful investigation as well as failure to investigate on the part of the deputy sheriff, who wilfully and knowingly concealed the rightful report with deliberate indifference to

26

Plaintiff's safety and rights and with the intent to deprive Plaintiff of his property; neglect, lying, and false pleadings by his attorney; and unspecified concealing of court documents. (Id. pp. 7, 9-10.) He alleges that clerk Nunn concealed the minute order of February 28, 2001 and unspecified evidentiary documents with intend to conceal the fraud of "the actors." (Id. p. 16.) He also asserts, however, that by keeping the minute order from the knowledge of Plaintiff but furnishing it to Collins, his new attorney, it caused Collins to make mistaken assumptions that Plaintiff had actually acquiesced in the settlement. (Id. p. 17.) He alleges that Thatcher, Peters, the prosecutor, and "all other actors" shared the same design "with grossly negligent and deliberate indifference" to Plaintiff's constitutional rights. (Id. p. 12.) He alleges that the stipulated judgment was obtained by fraud and thus was void. (Id. pp. 4., 16.) He recounts his version of the domestic dispute and of the proceedings that resulted in the issuance of the restraining order and the settlement. (Id. pp. 7-18.) He asserts that due to his attorney's fraud, he believed that he could challenge the ruling by a separate civil suit, and thereby entered into the settlement, and was then abandoned by his attorney. (Id. pp. 13-14.) Plaintiff seeks to be free from the stay-away order "unjustifiably imposed upon him by the state of California" (id. p. 2) and seeks injunctive relief as well as damages. (Id. p. 20.)

Broadly read, Plaintiff has alleged that various people undertook action with a united purpose to deprive Plaintiff of his property. However, the facts pled by Plaintiff do not state a basis for jurisdiction in this Court over Plaintiff's claim of

conspiracy among judges, a clerk, law enforcement officers, and others to deprive Plaintiff of due process of law or constitutional rights by their conduct. Here, loss of Plaintiff's property resulted from a state court judgment which has not been overturned or otherwise invalidated.

Appellate jurisdiction of state court judgments rests in the United States Supreme Court, 28 U.S.C. § 1257, not in the federal district court. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Rooker-Feldman doctrine provides that a federal district court is without subject matter jurisdiction to hear an appeal from the judgment of a state court. Bianchi v. Rylaarsdam, 334 F.3d 895, 896 (2003), cert. denied, Bianchi v. Rylaarsdam, 540 U.S. 1213, (2004). This Court, as a court of original jurisdiction, does not have the authority to review final determinations of a state court in judicial proceedings. Branson v. Nott, 62 F.3d 287, 291-92 (9th Cir. 1995) (applying the Rooker-Feldman doctrine and upholding the dismissal for lack of subject matter jurisdiction of a claim that in adjudicating the plaintiff's unsuccessful state tort claim, the state court clerk, judges, and attorneys conspired to deprive him of due process). This Court may not engage in an impermissible collateral attack on prior state court decisions. Id. The Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Exxon Mobil Corp. v. Saudi Basic Industries

1  <u>Corp.</u>, 544 U.S. 280, 125 S.Ct. 1517, 1522 (2005).

2  Here, the Plaintiff seeks injunctive relief in the form of

3  dismissal of the restraining order, a nunc pro tunc accounting of

4  the property, and damages for malicious abuse of process. (Cmplt.

5  p. 20.) It is clear that Plaintiff's claim is essentially an

6  impermissible collateral attack on the state court's issuance of,

7  and upholding upon direct and collateral attack, the restraining

8  order, as well as the court's effectuating the parties'

9  settlement of the property issues. Plaintiff names the state

10 court and the persons involved in the state court action and

11 asserts that the state court committed legal errors by

12 erroneously enforcing a settlement to which Plaintiff had

13 manifested his assent and by erroneously finding a waiver of

14 Plaintiff's rights. (Cmplt. p. 15). Plaintiff's suit is

15 essentially a collateral attack on the state court judgment. <u>Cf.</u>,

16 <u>Noel v. Hall</u>, 341 F.3d 1148, 1152-59 (9th Cir. 2003).

17 Further, even if it were possible to cast some portion of

18 Plaintiff's claim as a general constitutional challenge, a

19 federal district court is precluded from exercising jurisdiction

20 over general constitutional challenges that are inextricably

21 intertwined with claims asserted in state court. <u>District of</u>

22 <u>Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983). ;

23 <u>Doe & Associates Law Offices v. Napolitano</u>, 252 F.3d 1026, 1029

24 (9th Cir. 2001). A claim is inextricably intertwined with a state

25 court judgment if the federal claim succeeds only to the extent

26 that the state court wrongly decided the issues before it, or if

27 the relief requested in the federal action would effectively

28 reverse the state court decision or void its ruling. <u>Fontana</u>

29

1  Empire Center, LLC v. City of Fontana, 307 F.3d 987, 992 (9th

2  Cir. 2002). Here, there does not appear to be a part of

3  Plaintiff's claim that is not inextricably intertwined with the

4  state court judgment.

5      Accordingly, it will be recommended that to the extent that

6  Plaintiff states a conspiracy claim, and with respect to all

7  claims and issues inexplicably intertwined with issues decided by

8  the state court, such claims be dismissed because the Court lacks

9  subject matter jurisdiction.

10                          RECOMMENDATION

11     Accordingly, it IS RECOMMENDED that:

12     1) The Court DISMISS WITHOUT LEAVE TO AMEND and WITH

13 PREJUDICE Plaintiff's claims against the Superior Court, Clerk

14 Johnna Nunn, and Prosecutor Perry Patterson because of Eleventh

15 Amendment and judicial, quasi-judicial, and prosecutorial

16 immunity, respectively;

17     2) The Court DISMISS WITHOUT LEAVE TO AMEND and WITH

18 PREJUDICE for failure to state a claim Plaintiff's claims against

19 the Kern County Sheriff's Department, Deputy Larry Thatcher,

20 attorney Daniel Jon Tobias, attorney Jamie Gelber, Anne Frances

21 Peters, and Claudie Duckworth; and

22     3) The Court DISMISS this action based on this Court's lack

23 of subject matter jurisdiction over it because it constitutes an

24 impermissible collateral attack upon a state court judgment.

25     This report and recommendation is submitted to the United

26 States District Court Judge assigned to the case, pursuant to the

27 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

28 Local Rules of Practice for the United States District Court,

                              30

Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 1, 2006**            **/s/ Sandra M. Snyder**
icido3                                     UNITED STATES MAGISTRATE JUDGE

31